1  **BARRY R. GORE, ESQ. SBN 143278**
   **MARK J. SARNI, ESQ. SBN 164364**
2  **SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE**
   **A Professional Law Corporation**
3  **3424 Carson Street, Suite 350**
   **Torrance, California 90503**
4  **(310) 542-0111 Telephone**
   **(310) 214-7254 Facsimile**

5  Bankruptcy Counsel to Creditor Bay Area Financial Corporation

6

7                    **UNITED STATES BANKRUPTCY COURT**

8                     **CENTRAL DISTRICT OF CALIFORNIA**

9                          **LOS ANGELES DIVISION**

10

11 | In re                                    | Case No. 2:11-bk-31243-VZ
12 |                                          |
   | Andrew Ariza,                            | Chapter 11
13 |                                          |
   |              Debtor and Debtor in Possession. | **OBJECTION TO DEBTOR'S MOTION**
14 |                                          | **FOR ORDER AUTHORIZING THE USE**
   |                                          | **OF CASH COLLATERAL BY BAY AREA**
15 |                                          | **FINANCIAL CORPORATION;**
   |                                          | **DECLARATION OF VINCENT J.**
16 |                                          | **LOMBARDO IN SUPPORT THEREOF**
17 |                                          | **Date: August 23, 2011**
   |                                          | **Time: 11:00 a.m.**
18 |                                          | **Place: Courtroom 1568**
19

20        TO THE HONORABLE VINCENT P. ZURZOLO, JUDGE OF THE UNITED

21 STATES BANKRUPTCY COURT, THE UNITED STATES TRUSTEE, THE DEBTOR, HIS

22 COUNSEL, AND ALL INTERESTED PARTIES:

23        Secured Creditor Bay Area Financial Corporation ("Bay Area") hereby objects to the

24 Debtor's Motion For Order Authorizing The Use Of Cash Collateral (the "Motion") on the

25 grounds set forth below in the case of Andrew Ariza, the above-referenced debtor and debtor-in-

26 possession (the "Debtor"). Bay Area respectfully represents as follows:

27

# I.

## INTRODUCTION[1]

By the Motion, the Debtor – for the third time in this case – seeks to use cash collateral from rent of one unit of a duplex, where the Debtor lives in the other unit. The Debtor pay just $413 per month above the rents for the costs that he seeks to pay from those rents. The Debtor asserts without sufficient evidence that Bay Area's claim, which is secured by a third deed of trust, is entirely unsecured. Bay Area has requested an MAI appraisal on an expedited basis and will provide it to the Court when it is available. The Debtor does not propose to make any payments to Bay Area. However, Bay Area's claim is secured by both a third deed of trust on that duplex and by an assignment of rents to Bay Area from that duplex, so the Debtor is required to provide adequate protection of both of those interests. Instead, the Debtor proposes nothing for Bay Area and does not even address whether any creditor – including Bay Area – has an assignment of rents. Accordingly, Bay Area objects to the Motion and respectfully requests that it be denied.

# II.

## BACKGROUND

The Debtor filed a bankruptcy petition to commence this case on May 16, 2011 (the "Petition Date"). The Debtor is the debtor and debtor in possession in this case.

Bay Area made a loan to the Debtor secured by the property located at 1357-1359 Vienna Way, Venice, California 90291 (the "Property"), which is property of the Debtor's estate. The loan was made pursuant to a promissory note ("Note") and the Deed of Trust and Assignment of Rents and Request for Special Notice ("Deed of Trust"). A true and correct copy of the Note is attached as Exhibit "A;" a true and correct copy of the Deed of Trust is

---

[1] Bay Area's objections are based on this Objection, the Declaration of Vincent J. Lombardo ("Lombardo Decl.") that is attached hereto, the arguments of counsel, the record in this case, any oral or documentary evidence presented at or prior to the hearing on the Motion, and any other admissible evidence properly brought before the Court.

1   attached as Exhibit "B." Lombardo Decl. at ¶ 3.  The loan was originally secured by another

2   real property as well, but that real property was sold, Bay Area waived approximately $52,000

3   that it was owed by the Debtor to enable that sale to proceed, and the current amount that is

4   owed by the Debtor to Bay Area pursuant to the Note is approximately $250,000; this amount

5   does not include attorneys' fees and costs. *Id.*

6       Bay Area's claim is secured by the Property (to the extent the value of the Property

7   exceeds the unpaid first and second loans) and, in addition, it is secured by rents and other cash

8   collateral ("Cash Collateral") pursuant to the Deed of Trust.  Bay Area filed its Notice Of Non-

9   Consent Of Use Of Cash Collateral [Docket No. 22] ("Notice of Non-Consent").  A true and

10   correct copy of the Notice of Non-Consent is attached as Exhibit "C."  Lombardo Decl. at ¶ 4.

11       On May 17, 2011, the Debtor filed "Debtor's Emergency Motion for Order Authorizing

12   the Use of Cash Collateral," which was denied by the Court's order [Docket No. 9] entered on

13   May 23, 2011.

14       On July 12, 2011, the Debtor filed another motion to use cash collateral [Docket No. 37]

15   (the "Second Cash Collateral Motion").  Bay Area filed an objection to that motion [Docket No.

16   29] ("Bay Area's First Objection") (as did the United States Trustee and another creditor), and

17   that motion was denied by the Court at the hearing on that motion on July 19, 2011.

18       The Debtor alleges in the (current) Motion that he "believes" the value of the Property is

19   $1,100,000.  *See* Declaration of Andrew Ariza ("Ariza Declaration") attached to the Motion at

20   p. 10, lines 25-28 ("I will not be making debt service obligations to Bay Area because I believe

21   that the Vienna Property's scheduled value of $1,100,000.00 will be confirmed by the

22   concurrently filed Valuation Motion, making Bay Area's lien fully unsecured").

23       Comparing the Motion to the Second Cash Collateral Motion, the Motion now includes

24   a discussion of Local Bankruptcy Rule 4001-2 to address the United States Trustee's objection

25   to the Second Cash Collateral Motion, but otherwise the Motion is essentially on the same

26

27

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

1    grounds as the Second Cash Collateral Motion, though now it has a request that the relief

2    continue until December 1, 2011 and includes an exhibit showing the proposed uses of funds.

3        The Debtor, concurrently with filing the Motion, also filed the "Motion For Order To

4    Value Collateral And A Void Security Interest (Vienna Way)" [Docket No. 37] ("Motion to

5    Value"), which includes as exhibits states on the first, second, and third and an appraisal (which

6    is objectionable to Bay Area).  Bay Area is filing an objection to that motion concurrently, and

7    Bay Area has also sought a continuance of the hearing on the Motion to Value, because (among

8    other things) such relief is usually sought in an adversary proceeding, which would give the

9    Debtor and Bay Area rights to engage in discovery, and the purpose of the valuation is for plan

10   confirmation, which will not occur until the spring of 2012, so the Debtor's appraisal from

11   March 10, 2011 is not persuasive on the issue of the value of the Property for plan confirmation.

12       In the Motion, the Debtor states without support that "Deutsch holds a promissory note

13   secured by a first position deed of trust on the Vienna Property in the approximate current

14   amount of $923,580.00. Wells Fargo holds a promissory note secured by a second position deed

15   of trust on the Vienna Property in the approximate amount of $249,907.00.  Bay Area holds a

16   promissory note secured by a third position deed of trust on the Vienna Property in the

17   approximate amount of $249,692.00." Ariza Declaration at ¶ 6.  Bay Area reserves all of its

18   rights but uses these amounts for purposes of the discussion herein.

19       Bay Area  has requested an appraisal of the Property (the "BAF Appraisal") on an

20   expedited basis but has not yet received it; Bay Area will provide a copy of the BAF Appraisal

21   to the Court as soon as it is available. Lombardo Decl. at ¶ 5.

22       By the Motion, the Debtor seeks to pay only the holders of the first and second deeds of

23   trust but not to pay any amount to Bay Area (because the Debtor asserts that Bay Area's claim

24   is unsecured), and to pay for the actual and necessary costs and expenses for the maintenance

25   and preservation the Property, including insurance obligations, utilities, maintenance of the

26

27

4

1  Vienna Property, and marketing expenses to the extent necessary to keep the Property fully

2  leased, up to and including December 1, 2011.  Motion at page 4, lines 15-21.

3      Even after the Debtor was advised by Bay Area's First Objection to the Second Cash

4  Collateral Motion that the rents are Cash Collateral that secure its claim, the Debtor failed to

5  even acknowledge that Bay Area's claim is secured by the rent from the Property and does not

6  state whether or not the holders of the first and second deeds of trust also have assignments of

7  rents in the Motion.

8      The Debtor's income statement, which is part of his petition, indicates that he has

9  income of $8,000 per month from his job.  A true and correct copy of that page of the Debtor's

10  petition is attached here to as Exhibit "D." Lombardo Decl. at ¶ 7.

11      The Property is a duplex, where the Debtor lives in one unit and rents the other unit.

12  The Debtor states that the Property currently generates income of $3,500.00 per month. Motion

13  at page 5, line 10.  The Debtor argues that he "does contribute over $700.00 from his personal

14  income to maintain the property . . . ." Motion at p. 5, lines 17-18.  However, Exhibit 1 to the

15  Motion is a budget for expenses that states that the expenses that the Debtor pays are $695, and

16  more significantly, in that Exhibit, the Debtor miscalculates the amounts to be paid.  In Exhibit

17  1, the Debtor used $3,540 as the amount of the first mortgage in Exhibit 1 and separately

18  included $47 for insurance in that calculation, but Exhibit 1 to the Motion to Value indicates

19  that the payment on the first is just $3,305.46 and that amount includes property taxes and

20  insurance ($47 per month).  Therefore, the Debtor only pays $413 to live in a unit of the

21  Property.

22      The Debtor also does not address the argument (which was made in Bay Area's

23  Objection to the Second Cash Collateral Motion) that he should be paying rent for the unit in

24  which he lives.  The Debtor has stated in his reply [Docket No. 31] ("Reply") in support of the

25  Second Cash Collateral Motion that the Debtor's unit has not been remodeled like the unit that

26  rents for $3,500 per month, but he did not indicate what the rent should be.  Reply at p. 4, lines

27

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

14-16Bay Area estimates that the unit would rent for at least $2,500, which would be $30,000

of additional Cash Collateral per year.  Lombardo Decl. at ¶ 5.

### III.

### ANALYSIS

**A.    Bay Area's claim, which is secured by the Property, is not adequately**

**protected.[2]**

The Debtor contends that he does not need to provide any adequate protection to Bay

Area because Bay Area's claim is not secured by the Property.  Although the Debtor "believe[s]

that the Vienna Property's scheduled value of $1,100,000.00 will be confirmed by the

concurrently filed Valuation Motion, making Bay Area's lien fully unsecured" Motion at p. 10,

lines 25-28, this is not evidence of the Property's value because this testimony fails to provide

requisite foundational testimony from which personal knowledge can be ascertained. Lack of

personal knowledge (F.R.E. §602) (requiring that testimony include evidence "sufficient to

support a finding that the witness has personal knowledge of the matter.").  Although lay

persons may provide opinions, they may do so, *inter alia*, only if their testimony is "rationally

based on the perception of the witness." (F.R.E. §701).  However, the opinion must be based

upon first-hand personal experience. See, e.g., *Visser v. Packer Engineering Assocs., Inc.*, 924

F.2d 655, 659-660 (7th Cir. 1991); *Stagman v. Ryan*, 176 F.3d 986, 995-996 (7th Cir. 1999).  The

Debtor's opinion as to the value of the property does not stem from his personal experience.

The Court should not consider the appraisal submitted with the Motion to Value because it lacks

---

[2] The Motion does not comply with Local Bankruptcy Rule 9013-1(l), which states in
relevant part: ". . . it is the continuing duty of each party and attorney seeking such relief to
present to the judge to whom any subsequent motion is made, a declaration of a party or
witness or certified statement of an attorney setting forth the material facts and
circumstances surrounding each prior motion including: . . . (4) The new or different facts
and circumstances claimed to exist, which either did not exist or were not shown upon the
prior motion."  The Motion does not comply with Rule 9013-1(l), but even if the Motion is
parsed to identify the grounds therefor, it is clear that the Debtor has not identified any new
or different facts and circumstances that justify granting the Motion

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

1  foundation and is dated March 10, 2011, so it is almost five months old. Thus, the Debtor has

2  not provided evidence of the value of the Property and has not shown Bay Area's claim is not

3  secured by equity in the Property. Bay Area is concurrently filing its "Evidentiary Objection To

4  And Motion To Strike Portions Of Declaration Of Debtor In Support Of Motion For Order

5  Authorizing The Use Of Cash Collateral."

6      Section 361 of the Bankruptcy Code (which is discussed in detail below) provides the

7  various means for providing adequate protection to a secured creditor's claim. 11 U.S.C. 361.

8  The Debtor proposes not to give anything to Bay Area, so Bay Area's claim against the

9  Property is not adequately protected.

10  **B.    Bay Area's claim, which is secured by the rents and other Cash Collateral**

11  **from the Property, is not adequately protected.**

12      It is clear that all rents, issues, and profits and other Cash Collateral of any property

13  described in the Deed of Trust constitute "Cash Collateral" as defined in Section 363(c) of the

14  Bankruptcy Code and, therefore, must be sequestered and segregated by the Debtor. *Scottsdale*

15  *Medical Pavilion v. Mutual Benefit Life Ins. Co. (In re Scottsdale Medical Pavilion)*, 159 B.R.

16  295, 301 (B.A.P. 9th Cir. Ariz. 1993), aff'd by 52 F.3d 244, 245 (9th Cir. 1995); *In re Goco*

17  *Realty Fund I*, 151 B.R. 241, 250 (Bankr. N.D. Cal. 1993) ("rents generated post-petition from

18  the properties are cash collateral").

19      It is also clear that a secured creditor with a security interest in Cash Collateral "is

20  entitled to adequate protection for their use." *In re Goco Realty Fund I*, 151 B.R. at 250; *Wright*

21  *v. Wash. Fed. Sav. (In re Wright)*, 2011 Bankr. LEXIS 1486, 10-12 (B.A.P. 9th Cir. Mar. 14,

22  2011).

23      Section 361 of the Bankruptcy Code provides the options for adequate protection:

24          When adequate protection is required under section 362, 363, or 364 of
           this title [11 USCS § 362, 363, or 364] of an interest of an entity in property, such

25      adequate protection may be provided by—
              (1) requiring the trustee to make a cash payment or periodic cash

26      payments to such entity, to the extent that the stay under section 362 of this title
           [11 USCS § 362], use, sale, or lease under section 363 of this title [11 USCS §

27

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

363], or any grant of a lien under section 364 of this title [11 USCS § 364] results in a decrease in the value of such entity's interest in such property;

    (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

    (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title [11 USCS § 503(b)(1)] as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. 361.

From the Motion, it is clear that the Debtor is not offering to provide any adequate protection for Bay Area's secured interest in Cash Collateral because every payment from the rents decreases the cash securing Bay Area's secured interest in those rents and other Cash Collateral. Indeed, the Debtor argues that the "use of Cash Collateral to pay the necessary and essential expenses of operations and maintenance is in the best interest of the estate and its creditors, in that, it will preserve and improve the value of the income stream constituting Cash Collateral and the value of the Vienna Property, for the benefit of the Debtor's estate and its creditors" Motion at p. 5 line 25 to p. 6. line 1; Old Motion at p. 4, lines 11-15. However, even after the Debtor was advised by Bay Area's Objection to the Debtor's last motion to use cash collateral that the rents secure its claim, the Debtor failed to even acknowledge that Bay Area's claim is secured by the rent from the Property in the Motion. The Debtor also failed to explain how spending the Cash Collateral, which secures Bay Area's claim, could possibly benefit Bay Area, whose secured claim against those rents would obviously be decreased by every dollar spent from those rents.

In addition, from the Debtor's income statement, the Debtor receives income of $8,000 per month from his job, but he proposes to pay nothing to live in the other unit of the Property except the difference between the costs for mortgages, maintenance, etc. listed on Exhibit A and the rents of $3,500. He miscalculated that amount as $695, and as noted above, that amount is only $413. Effectively, the Debtor has leased that unit to himself. A debtor that uses real property that is property of the estate must pay the secured creditor for its use. In re Rolanco,

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

1   Inc., 43 B.R. 153, 156 (Bankr. E.D. Mo. 1984).  In Rolanco, a Chapter 11 debtor ran his

2   business, a farm, on the real property that secured a bank's claim, and the court concluded:

3   > [B]asic principles of equity are incorporated into the concept of adequate
>   protection, see 2 Collier on Bankruptcy, pp. 361-12 and 361-13 (15th Ed.). Here,
4   > Movant has not received, since the filing of the Chapter 11 petition herein, any
>   form of debt service or compensation for the Debtor's use of its collateral, valued
5   > in excess of 1 million dollars. As stated in its May 16, 1984 opinion, this Court
>   believes that Movant is entitled to compensation equal to the rental value of the
6   > land in question.

7   Rolanco at 156; In re Glinz, 69 B.R. 916, 921 (Bankr. D.N.D. 1987) ("In exchange for allowing

8   the Debtors the right to remain in possession past the fictional date of June 13, 1987, retain a

9   leasehold interest, and retain the profits, Travelers should be accorded adequate protection in the

10  form of the rental payments normally expected on land in Stutsman County for the 1987 crop

11  year."); In re Rush, 9 B.R. 197, 201 (Bankr. E.D. Pa. 1981) ("[J]ust as a mortgagee would be

12  entitled to foreclose on a debtor's realty for pre-petition arrearages, we conclude that the

13  landlord is entitled to relief from the automatic stay in order to permit it to proceed in state court

14  to recover premises leased by the debtor from the landlord where the debtor is in pre-petition

15  default in the payment of rent.").  Bay Area has a secured interest in rents from the Property,

16  and the Debtor should not be able to use the Property as his residence and at the same time use

17  the rents from the other unit to pay only the other lenders.

18      Accordingly, the Debtor should be paying market rent to the Debtor's estate, and that

19  rent should also be Cash Collateral that secures Bay Area's claim, so the Debtor is further

20  eroding the Cash Collateral that secures Bay Area's claim.

21      Therefore, Bay Area is not receiving adequate protection for its interests in the Property

22  and cash collateral, and the Motion should be denied.

23  / / /

24  / / /

25  / / /

26

27

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

1

## IV.

## CONCLUSION

For the foregoing reasons, Bay Area respectfully requests that the Motion be denied.

August 9, 2011                              SMITH | CAMPBELL | CLIFFORD | KEARNEY |
                                           GORE, APLC

By: _____
    Barry R. Gore
    Counsel to Bay Area Financial Corporation

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

## DECLARATION OF VINCENT J. LOMARDO

I, Vincent J. Lombardo, declare as follows:

1.      I am the Secretary and General Counsel to Bay Area Financial Corporation,

("Bay Area").  I have personal knowledge of the following, or have gained such knowledge

from my review of the records of the Debtor, which are obtained, created and maintained in the

ordinary course of business, and if called as a witness, could and would competently testify

thereto.

2.      I am one of the custodians of the books, records and files of Bay Area that

pertain to the loans and extensions of credit given to Andrew Ariza (the "Debtor") in the above

captioned proceeding, concerning the Property located at 1357-1359 Vienna Way, Venice,

California 90291 (the "Property").  I have personally worked on books, records and files, and as

to the following facts, I know them to be true of my own knowledge or I have gained

knowledge from them from the business records of Bay Area on behalf of Bay Area, which

were made at or about the time of the events recorded, and which are maintained in the ordinary

course of Bay Area's business at or near the time by a person who had personal knowledge of

3.      Bay Area made a loan to the Debtor secured by the Property, which is property

of the Debtor's estate.  The loan was made pursuant to a promissory note ("Note") and the Deed

of Trust and Assignment of Rents and Request for Special Notice ("Deed of Trust").  A true and

correct copy of the Note is attached as Exhibit "A." A true and correct copy of the Deed of

Trust is attached as Exhibit "B."  The loan was originally secured by another real property as

well, but that real property was sold, Bay Area waived approximately $52,000 that it was owed

by the Debtor to enable that sale to proceed, and the current amount that is owed by the Debtor

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

to Bay Area pursuant to the Note is approximately $250,000; this amount does not include

attorneys' fees and costs.

4.    Bay Area filed its Notice Of Non-Consent Of Use Of Cash Collateral [Docket

No. 22] ("Notice of Non-Consent").  A true and correct copy of the Notice of Non-Consent is

attached as Exhibit "C."

5.    Bay Area has requested an MAI appraisal on an expedited basis and will provide

it to the Court when it is available.  Bay Area reserves all of its rights but uses the amounts set

forth in the Motion for the loans secured by the Property for purposes of the discussion in the

Motion.  Bay Area reserves all of its rights with respect to its claim, including but not limited to

the amount it is owed by the Debtor and the value of the Property.

6.    The Debtor states that the Property currently generates income of $3,500.00 per

month, Motion at page 5, line 1, but he does not address the fact that he should be paying rent to

the Debtor's estate for the unit in which he lives.  I believe that the rent for the Debtor's unit of

the duplex is at least $2,500 per month, which relates to $30,000 in cash collateral each year.

7.    The Debtor's income statement, which is part of his petition, indicates that he

has income of $8,000 per month from his job.  A true and correct copy of that page of the

Debtor's petition is attached here to as Exhibit "D."

/ / /

/ / /

/ / /

/ / /

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

8.    Bay Area objects to the Debtor's use of cash collateral without providing Bay Area adequate protection of its interests in the Property and/or its interest in Cash Collateral, in which Bay Area holds a secured interest.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration is executed on August 9, 2011, at Los Angeles, California.

Vincent J. Lombardo

OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

EXHIBIT "A"

# C O N S T R U C T I O N
# O P T I O N A L     A D V A N C E     N O T E
### (Variable Note)

$975,750.00 Plus Interest

Los Angeles, California
September 13, 2006

## "THIS IS A VARIABLE RATE LOAN - BALLOON PAYMENT"

FOR VALUE RECEIVED, the undersigned hereby promises to pay to BAY AREA FINANCIAL CORPORATION, or order, at 12400 Wilshire Boulevard, Suite 230, Los Angeles, California the principal sum of $975,750.00, or so much thereof as shall at any time be advanced by the Lender, plus interest on the unpaid principal balance as provided below. All or any part of the principal on this note may be borrowed, repaid and re-borrowed from time to time prior to maturity. Loans hereunder may be made upon the oral or written request of any person authorized in the resolution on file with BAY AREA FINANCIAL CORPORATION.

This is a variable interest rate note and the interest rate may increase or decrease depending upon subsequent changes in the prime rate of interest. The "prime rate of interest" is the prime rate announced as being charged by Wells Fargo Bank of California, from time to time. Should at any time, Wells Fargo Bank cease announcing a prime rate of interest then "prime rate of interest" under this note shall mean whatever reference rate Wells Fargo Bank does announce as being a substitute for its prime rate of interest. Interest on this note shall be computed on the basis of a 360 day year for actual days elapsed.

This is a variable interest rate loan and the interest rate will increase or decrease with changes in the prime loan rate. This interest rate will be 5.00 percentage points above the prime loan rate. The initial prime loan rate is **eight one-quarter percent (8.25%)** which is the published rate as of **September 11, 2006**; therefore, the initial interest rate is **13.25%** per year. As the prime rate of interest increases or decreases, the rate of interest hereunder shall correspondingly increase or decrease so that the interest rate shall at all times be equal to 5.00 percentage points higher than the prime rate on a daily basis.

Interest will be payable in monthly installments which installments are due on the _____ day of each month commencing

Loan No. 23591.06                     1

October   , 2006 and continuing thereafter until this note has been paid in full.  Principal shall be payable in full on **March** , **2007** ("the final maturity date"), together with (1) all accrued and unpaid interest and (2) all sums which are owed to BAY AREA FINANCIAL CORPORATION under the terms of this note including but not limited to late charges, costs of any kind or nature, and/or advancements of any kind or nature made by BAY AREA FINANCIAL CORPORATION for the protection of the liens on the real property which is security for this note.

This note is secured by two (2) deeds of trust of even date herewith to Job Insurance Agency, a California corporation, as Trustee, and reference is made to such Deed of Trust for rights to acceleration of the indebtedness evidenced by this note, including the following paragraph:

"If the Trustor shall sell, convey or alienate the property herein described, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, the Beneficiary shall have the right at its option to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable."

In the event of failure to pay principal or interest under this note when due, or in the event of default under any agreement between the undersigned and BAY AREA FINANCIAL CORPORATION may, at its election and without notice to undersigned, declare the entire unpaid balance hereof together with all accrued interest immediately due and payable.

Payments on this note shall be credited first to interest then due and the remainder to principal.  If this note is not paid when due, the undersigned promises to pay all costs of collection and reasonable attorneys' fees incurred by Bank whether or not suit is filed hereon.

If any installment of principal or interest hereunder is not paid when due, the holder shall have the following rights in addition to the rights set forth in the preceding paragraph: (a) the right to add unpaid interest to principal and to have such

Loan No. 23591.06                    2

amount thereafter bear interest as provided in this note, and (b) if any installment is more than ten (10) days past due, the right to collect a charge of six percent (6%) of the delinquent payment or fifteen dollars ($15.00) whichever is greater. This charge is the result of a reasonable endeavor by the undersigned and the holder to estimate the holder's added costs and damages resulting from the undersigned's failure to timely make payments under this note, hence the undersigned agrees that the charge shall be presumed to be the amount of damage sustained by the holder since it is extremely difficult to determine the actual amount necessary to reimburse the holder for such damages. If this note is not paid when due, the undersigned further promises to pay all costs of collection, foreclosure fees and reasonable attorneys' fees incurred by the holder whether or not suit is filed hereon.

In the event of a default under this note, including but not limited to: nonpayment of any installment of principal or interest within ten (10) days of its designated due date; failure to pay insurance premiums or property taxes; transfer of title, the remaining principal balance shall bear interest at a rate of interest which shall be eight percent (8%) higher than the aforementioned prime rate of interest until this note has been paid in full.

No transfer of an interest by the beneficiary in this Note shall be effective unless notice of such transfer, including the name and address of the transferee, has been provided to you. If such transferee does not provide you with satisfactory evidence that it is not a foreign corporation or nonresident alien, you shall have the right to withhold tax from the payments due to such transferee as required under the Internal Revenue Code or applicable state law, and the withholding of such interest shall not constitute a default under this Note or the Deeds of Trust securing the same.

This note is secured by one (1) trust deed on the properties commonly known as **3710 Grand View Blvd., Los Angeles, CA 90066 and 1357-1359 Vienna Way, Venice, CA 90291 and personal guarantee of Mark Kaplan secured by the property located at 12122 Victoria Avenue, Los Angeles, CA 90066.**

The undersigned may prepay all or any part of this note at any time without penalty or premium whatsoever by paying the balance owing plus all accrued and unpaid interest thereon.

Loan No. 23591.06                    3

Presentment of payment, notice of dishonor, protest, and notice of protest are expressly waived. No delay or omission by Bank to exercise any right hereunder, whether before or after the happening of any event of default, shall impair any such right or shall be construed as a waiver thereof or of any such event of default. This note cannot be changed, modified, amended or terminated orally.

Dated: September 13, 2006

BORROWER(S):

_____
ANDREW ARIZA

WITNESS

_____

Loan No. 23591.06                     4

LOAN EXTENSION AGREEMENT

BY AND BETWEEN

BAY AREA FINANCIAL CORPORATION, LENDERS

AND

ANDREW ARIZA, BORROWER

This agreement dated March    ,2007, is hereby to take effect on the loan of borrower to Bay Area Financial Corporation loan number 23591.06.  It is hereby agreed by the undersigned that the above mentioned loan shall be extended for a period of six (6) weeks from the date of expiration, up to and including April 26, 2007.  Said loan shall be paid off in its entirety on or before April 26, 2007.  Further, this agreement does not waive the borrower's monthly payments which are due on or before March 15, 2007, and the 15th day thereafter until paid in full in the approximate sum of $11,133.04.  All accounts must be current to extend.

Further, the borrower agrees to pay the sum of $3,150.00 representing the extension fee, and an attorney documentation fee of $350.00.

Upon execution of this agreement Borrower shall pay to Lenders the total sum of $3,500.00 representing the extension fee and the documentation fee.  All other terms and conditions of the original

loan shall be held in full force and effect.

BAY AREA FINANCIAL CORPORATION

BY: _____          _____
                                              ANDREW ARIZA

LOAN EXTENSION AGREEMENT

BY AND BETWEEN

BAY AREA FINANCIAL CORPORATION, LENDERS

AND

ANDREW ARIZA, BORROWER

This agreement dated April    ,2007, is hereby to take effect on the loan of borrower to Bay Area Financial Corporation loan number 23591.06. It is hereby agreed by the undersigned that the above mentioned loan shall be extended for a period of three (3) months from the date of expiration, up to and including July 26, 2007. Said loan shall be paid off in its entirety on or before July 26, 2007. Further, this agreement does not waive the borrower's monthly payments which are due on or before April 26, 2007, and the 26th day thereafter until paid in full in the approximate sum of $11,133.04. All accounts must be current to extend.

Further, the borrower agrees to pay the sum of $7,318.13 representing the extension fee (3/4 pt), and an attorney documentation fee of $350.00.

Upon execution of this agreement Borrower shall pay to Lenders the total sum of $7,668.13 representing the extension fee and the documentation fee. All other terms and conditions of the original

loan shall be held in full force and effect.

**BAY AREA FINANCIAL CORPORATION**

BY:_____

ANDREW ARIZA

5/6/07

LOAN EXTENSION AGREEMENT

BY AND BETWEEN

BAY AREA FINANCIAL CORPORATION, LENDERS

AND

ANDREW ARIZA, BORROWER

This agreement dated August    ,2007, is hereby to take effect on the loan of borrower to Bay Area Financial Corporation loan number 23591.06.  It is hereby agreed by the undersigned that the above mentioned loan shall be extended for a period of six (6) months from the date of expiration, up to and including January 26, 2008.  Said loan shall be paid off in its entirety on or before January 26, 2008.  Further, this agreement does not waive the borrower's monthly payments which are due on or before August 26, 2007, and the 26th day thereafter until paid in full in the approximate sum of $4,475.55.  All accounts must be current to extend.

Further, the borrower agrees to pay the sum of $5,700.00 representing the extension fee of one and one-half (1 ½) point, attorney documentation fee of $350.00.

Upon execution of this agreement Borrower shall pay to Lenders the total sum of $6,050.00 representing the extension fee, and the documentation fee, and any extension thereto.  All other terms and

conditions of the original loan and any extensions thereto shall be held in full force and effect.

BAY AREA FINANCIAL CORPORATION

BY:_____

ANDREW ARIZA

LOAN EXTENSION AGREEMENT

BY AND BETWEEN

BAY AREA FINANCIAL CORPORATION, LENDERS

AND

ANDREW ARIZA, BORROWER

This agreement dated ~~January~~ *February 19th* ,2008, is hereby to take effect on the loan of borrower to Bay Area Financial Corporation loan number 23591.06.  It is hereby agreed by the undersigned that the above mentioned loan shall be extended for a period of six (6) months from the date of expiration, up to and including July 26, 2008.  Said loan shall be paid off in its entirety on or before July 26, 2008.  Further, this agreement does not waive the borrower's monthly payments which are due on or before January 26, 2008, and the 26th day thereafter until paid in full in the approximate sum of $4,008.48.  All accounts must be current to extend.

Further, the borrower agrees to pay the sum of $5,700.00 representing the extension fee of one and one-half (1 ½) point, attorney documentation fee of $350.00.

Upon execution of this agreement Borrower shall pay to Lenders the total sum of $6,050.00 representing the extension fee, and the documentation fee, and any extension thereto.  All other terms and

conditions of the original loan and any extensions thereto shall be held in full force and effect.

BAY AREA FINANCIAL CORPORATION

BY:_____

ANDREW ARIZA

LOAN EXTENSION AGREEMENT

BY AND BETWEEN

BAY AREA FINANCIAL CORPORATION, LENDERS

AND

ANDREW ARIZA, BORROWER

This agreement dated August    ,2008, is hereby to take effect on the loan of borrower to Bay Area Financial Corporation loan number 23591.06. It is hereby agreed by the undersigned that the above mentioned loan shall be extended for a period of six (6) months from the date of expiration, up to and including January 26, 2009. Said loan shall be paid off in its entirety on or before January 26, 2009. Further, this agreement does not waive the borrower's monthly payments which are due on or before August 26, 2008, and the 26th day thereafter until paid in full in the approximate sum of $3,166.67. All accounts must be current to extend.

Further, the borrower agrees to pay the sum of $5,700.00 representing the extension fee of one and one-half (1 ½) point, attorney documentation fee of $350.00.

Upon execution of this agreement Borrower shall pay to Lenders the total sum of $6,050.00 representing the extension fee, and the documentation fee, and any extension thereto. All other terms and

conditions of the original loan and any extensions thereto shall be held in full force and effect.

BAY AREA FINANCIAL CORPORATION

BY:_____

ANDREW ARIZA

EXHIBIT "B"

Equity Title

06 2055532

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO
Bay Area Financial Corporation
12400 Wilshire Blvd., Ste. 230
Los Angeles, CA  90025

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST AND ASSIGNMENT OF RENTS AND REQUEST FOR SPECIAL NOTICE

*This Document Provided by Commonwealth Land Title Company*

**This Deed of Trust**, made this 13th day of September , 2006                    ,between  ANDREW ARIZA, **A SINGLE man**, here in called **Trustor**, whose address is 1357 Vienna Way, Venice, CA  90291,  and Bay Area Financial Corporation, a California Corporation, herein called **Beneficiary**, whose address is 12400 Wilshire Blvd., Ste. 230, Los Angeles, CA  90025 and JOB INSURANCE AGENCY,  A California corporation, herein called **Trustee**,

**Witnesseth: THAT TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE**, that property in Los Angeles County, California, described as:

See Exhibit "A" attached hereto and by this reference, incorporated herein.

Additionally this deed of trust is subject to the terms and conditions as set forth in "Rider No. 1" which is attached hereto and made a part hereof.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (11) of the provisions set forth below to collect and apply such rents, issues and profits. **For the Purpose of Securing:** 1.  Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidence by one promissory note of even date herewith, and any extension of renewal thereof, in the principal sum of **$975,750.00** executed by Trustor in favor of Beneficiary or order.  3.  Payment of such further sums as the then record owner of such property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

To Protect the Security of This Deed of Trust, Trustor Agrees:

(1)  That Trustor will observe and perform said provisions; and that the referenced to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations and parties set forth in this Deed of Trust.

(2)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration's herein not excluding the general.

(3)  To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured herein and in such order as beneficiary may determined or at option of Beneficiary the entire amount so collected or any part hereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereinunder or invalidate any act done pursuant to such notice.

(4)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable

sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to record this Deed.

(5) To pay; at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or a part thereof, which appear to be prior to superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(6) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(7) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(9) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may; reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(10) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property held hereunder. The recitals in such RECONVEYANCE of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may described as "The person or persons legally entitled thereto". Five years after issuance of such full RECONVEYANCE, Trustee may destroy said Note and this Deed (unless directed in such request to retain them).

(11) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving until Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collected and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebdtness hereby secured enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonably attorney's fees, upon indebtedness secured hereby, and in such order as Beneficiary may determined. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(12) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall post it with Trustee this Deed said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required y law, Trustee without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determined, a public auction to the highest bidder for cash in lawful money of the United States, payable a the time of sale. Trustee may postpone sale of all or a portion of said property by public announcement of such time and place of sale, and from time to time thereafter may postpone sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any convenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

(13) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in wiring, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the County or Counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(14) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder,

06  2055532

including pledges of the note secured hereby whether or not named as Beneficiary herein.  In this Deed, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor request that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

In accordance with Section 2924b, Civil Code, request is hereby made by the undersigned TRUSTOR that a copy of any Notice of Default and a copy of any Notice of Sale under Deed of trust recorded on January 18, 2006, Instrument No. 06-0112425, in Book ____, Page ____, of Official Records in the Office of the County Recorder of Los Angeles as affecting above described property, executed by Andrew Ariza, a single man as Trustor in which is named Mortgage Electronic Registration Systems, Inc. ("MERS"), is a Separate Corporation that is acting solely as a nominee for lender and Lender's Successors and assigns, America's Wholesale Lender, a Corporation, as Beneficiary, and CTC Real Estate Services, as Trustee, be mailed to Bay Area Financial Corporation, a California Corporation  whose address is 12400 Wilshire Blvd., Ste. 230, Los Angeles, CA  90025.

NOTICE:  A copy of any Notice of Default and any Notice of Sale will be sent to the address contained in this record request. if you address changes, a new request must be recorded.

Dated:  September 13, 2006

ANDREW ARIZA

---

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_____ }SS.
On ___9-13-06_____ before me, ___Kim Wizu_____ (insert name) Notary Public, personally appeared ___Andrew Ariza_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/ are subscribed to the within instrument and acknowledged to me that he/she/they  executed the same in  his/her/their  authorized capacity(ies), and that by  his/her/their  signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___Kim Wizu_____

KIM WIZER
Commission # 1419502
Notary Public - California
Los Angeles County
My Comm. Expires Jun 19, 2007

06 2055532

PAGE 3

# R I D E R   N O .   1

Rider to Deed of Trust,
Assignment of Rents,
dated September 13, 2006
between
**ANDREW ARIZA, Trustor ("Trustor")**
**and Job Insurance Agency, Trustee ("Trustee")**
**and Bay Area Financial Corporation as Beneficiary ("Beneficiary")**

Notwithstanding any terms or conditions to the contrary contained in the Deed of Trust, Trustor agrees;

1.   To pay any and all costs and expenses, including attorney's fees, incurred by Beneficiary to enforce its rights hereunder, whether or not suit is brought thereon;

2.   To pay interest on each sum expended by Beneficiary or Trustee in enforcing the obligations secured hereby from the date of expenditure until the date of repayment at the rate of interest in effect from time to time during such period under the promissory note secured hereby;

3.   If the Trustor shall sell, convey or alienate the property herein described, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, the Beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable;

4.   If any provision contained herein is held to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force and effect.

BORROWER(S):

_____
ANDREW ARIZA

WITNESS:

_____

Loan No. 23591.06

06·2055532

EXHIBIT "A"

PARCEL 1:

THOSE PORTIONS OF LOT 16 IN BLOCK "C" OF THE RESUBDIVISION OF OCEAN PARK HEIGHTS
ADDITION, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS
PER MAP RECORDED IN BOOK 7, PAGE 166, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY, AND ALL OF LOT 2 IN BLOCK "G" OF THE REPLAT OF OCEAN PARK HEIGHTS, IN
THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 6, PAGE 199, OF MAP RECORDS, LYING NORTHERLY OF A LINE PARALLEL
WITH THE SOUTHERLY LINE OF VICTORIA AVENUE (FORMERLY ROSE AVENUE) WHICH PASSES
THROUGH A POINT IN THE EASTERLY LINE OF GRAND VIEW BOULEVARD, 100 FEET WIDE,
DISTANT SOUTHERLY ALONG SAID EASTERLY LINE 77 FEET FROM THE SOUTHERLY LINE OF
VICTORIA AVENUE, 50 FEET WIDE.

EXCEPT THEREFROM THE EASTERLY 72.89 FEET OF SAID LOT 2 SAID EASTERLY 72.89 FEET
BEING BOUNDED BY A LINE 72.89 FEET WESTERLY OF AND PARALLEL WITH THE EASTERLY LINE
OF SAID LOT 2.

SAID LAND IS ALSO SHOWN AS PARCEL 1 ON CERTIFICATE OF COMPLIANCE FOR LOT LINE
ADJUSTMENT PURSUANT TO PARCEL MAP EXEMPTION NO. AA-2006-1538-PMEX RECORDED JULY
26, 2006, AS INSTRUMENT NO. 06-1655055, OF OFFICIAL RECORDS.

COMMONLY KNOWN AS:  3710 GRAND VIEW BOULEVARD, LOS ANGELES, CALIFORNIA.

PARCEL 2:

LOT 20 OF DURLEY PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 20 PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.

More commonly known as:  1357 - 1359 Vienna Way, Venice, CA  90291

3   06·2055532




This page is part of your document - DO NOT DISCARD

**06 2055532**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**09/15/06 AT 08:00am**

TITLE(S) :





L E A D    S H E E T

FEE

| FEE $ 33. RR |
| DAF $ 6 |
| C-20        5 |

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9_____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

        THIS FORM IS NOT TO BE DUPLICATED        

EXHIBIT "C"

**BARRY R. GORE, ESQ. SBN 143278**
**SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE**
**A Professional Law Corporation**
**3424 Carson Street, Suite 350**
**Torrance, California 90503**
**(310) 542-0111 Telephone**
**(310) 214-7254 Facsimile**

Bankruptcy Counsel to Creditor Bay Area Financial Corporation

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:11-bk-31243-VZ |
| Andrew Ariza, | Chapter 11 |
| Debtor and Debtor in Possession. | **NOTICE OF NON-CONSENT OF USE OF CASH COLLATERAL** |
| | NO HEARING REQUIRED |

PLEASE TAKE NOTICE that claimant Bay Area Financial Corporation ("Claimant") hereby provides notice pursuant to Sections 363(c)(2) and 546(b) of the Bankruptcy Code in lieu of seizure of property or commencement of action. Claimant is a secured creditor of debtor Andrew Ariza ("Debtor").

This Notice perfects and makes choate all rights of Claimant under the loan documents, pursuant to which Claimant was granted a security interest in the rents, issues, and profits of the property described in the Deed of Trust and Assignment of Rents and Request for Special Notice ("Deed of Trust") made, executed and delivered by Debtor to Claimant. The Deed of Trust was duly recorded in the Official Records of the Los Angeles County Recorder's Office. In accordance with the terms of the Deed of Trust and this Notice, all rents, issues, and profits

1

of any Property described in the Deed of Trust constitutes "Cash Collateral" as defined in

Section 363(c) of the Bankruptcy Code and, therefore, must be sequestered and segregated by

the Debtor forthwith.   Section 363(c)(2) prohibits use of Cash Collateral by the Debtor, except

upon authority of the Bankruptcy Code, after notice and a hearing or pursuant to Claimant's

express consent.   As set forth in this Notice, Claimant expressly does not consent to the

Debtor's use of Cash Collateral.

        Accordingly, this Notice requires that the Debtor either (a) obtain the written

consent of Claimant to use the Cash Collateral and to account to Claimant for the use of the

Cash Collateral or (b) obtain an order from the United States Bankruptcy Court to use the Cash

Collateral.

June 20, 2011

SMITH | CAMPBELL | CLIFFORD | KEARNEY |
GORE, APLC


By: _____
    Barry R. Gore
    Counsel to Bay Area Financial Corporation

Notice of Non-Consent of Use of Cash Collateral

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as **NOTICE OF NON-CONSENT OF USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 20, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**See attached service list**

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On **June 20, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**See attached service list**

☒  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| June 20, 2011 | Brenda L. Campos | |
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                    **F 9013-3.1.PROOF.SERVICE**

<u>**SERVICE LIST**</u>

**SECTION I**

<u>**SERVED VIA NEF**</u>

<u>**Office of the US Trustee**</u>
Ustregion16.la.ecf@usdoj.gov

Dare Law
Dare/law@usdoj.gov

Melanie C. Scott
Melanie.scott@usdoj.gov

<u>**Debtor's Attorney**</u>
Michael J. Berger, Esq.
Michael.berger@bankruptcypower.com
maritza.arizaga@bankruptcypower.com

<u>**Creditor Bay Area Financial Attorney**</u>
Barry R. Gore, Esq.
bgore@scckg.com

<u>**Other Interested Parties**</u>
Darlene C. Vigil
cdcaecf@bdfgroup.com

Mehrdaud Jafarnia
bknotice@mccarthyholthus.com


**SECTION II**

<u>**SERVED VIA US MAIL**</u>

<u>**JUDGE**</u>
Honorable Ernest M. Robles
255 E. Temple St., Suite 1560
Los Angeles, CA 90012

<u>**DEBTOR**</u>
Andrew Ariza
1359 Vienna Way
Venice, CA 90291

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                    **F 9013-3.1.PROOF.SERVICE**

## SECTION II CONTINUED

### SERVED VIA US MAIL

### SECURED CREDITORS

Bay Area Financial
Agent for Service of Process
Vincent Lombardo
12400 Wilshire Blvd. Suite 230
Los Angeles, CA 90025

Indymac Bank
Attn: Bankruptcy Dept.
P.O. Box 4045
Kalamazoo, MI 49003

Wells Fargo Bank NA
Agent for Service of Process
Lawyers Incorporating Services
2730 Gateway Oaks Dr. Suite 100
Sacramento, CA 95833

### UNSECURED CREDITORS

Bank of America
Attn: Bankruptcy Dept.
P.O. Box 26012
Greensboro, NC 27410

Bank of America FIA Card
Attn:  Bankruptcy Dept.
P.O. Box 26012
Greensboro, NC 27410

Cavalry Portfolio Service
Attn: Deborah Reilly
P.O. Box 1017 Hawthorne, NY 10532

CBA Collection Bureau
P.O. Box 5013
Hayward, CA 94540

Chase
201 N. Walnut St./Del-1027
Wilmington, DE 19801

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                          **F 9013-3.1.PROOF.SERVICE**

**SECTION II CONTINUED**

**SERVED VIA US MAIL**

**UNSECURED CREDITORS**

Credit Management
4200 International Parkway
Carrolton, TX 75007

Designed Receivable
1 Centerpointe Dr., Suite 45
La Palma, CA 90623

Discover Financial
P.O. Box 6103
Carol Stream, IL 60197

Elvis Pmental
P.O. Box 2321
Winnetka, CA 91396

Frederick Hanna & Assoc.
1427 Roswell Rd.
Marietta, GA 30062

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

JP Morgan Chase Legal Dept.
Attn: John Nguyen
300 S. Grand Ave, 4th Floor
Los Angeles, CA 90071

Marina Del Rey Hospital
4650 Lincoln Blvd.
Marina Del Rey, CA 90292

Pineapple Pools, Inc
P.O. Box 1352
Moorpark, CA 93020

Rusher Air Conditioning
19626 S. Normandie Ave.
Torrance, CA 90502

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                    **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "D"

B22B (Official Form 22B) (Chapter 11) (12/10)

In re __Andrew Ariza_____
                   Debtor(s)

Case Number: _____
                   (If known)

# CHAPTER 11 STATEMENT OF CURRENT MONTHLY INCOME

In addition to Schedules I and J, this statement must be completed by every individual Chapter 11 debtor, whether or not filing jointly. Joint debtors may complete one statement only.

| | Part I. CALCULATION OF CURRENT MONTHLY INCOME | | | | Column A Debtor's Income | Column B Spouse's Income |
|---|---|---|---|---|---|---|
| 1 | **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed. <br> a. ■ **Unmarried.** Complete only Column A ("Debtor's Income") for Lines 2-10. <br> b. ☐ **Married, not filing jointly.** Complete only column A ("Debtor's Income") for Lines 2-10. <br> c. ☐ **Married, filing jointly.** Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 2-10. | | | | | |
| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | | | | | |
| 2 | **Gross wages, salary, tips, bonuses, overtime, commissions.** | | | | $    0.00 | $ |
| 3 | **Net income from the operation of a business, profession, or farm.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 3. If more than one business profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. | | Debtor | Spouse | | |
| | | a. | Gross receipts | $   8,000.00 | $ | | |
| | | b. | Ordinary and necessary business expenses | $       0.00 | $ | | |
| | | c. | Business income | Subtract Line b from Line a | | $   8,000.00 | $ |
| 4 | **Net Rental and other real property income.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. Do not enter a number less than zero. | | Debtor | Spouse | | |
| | | a. | Gross receipts | $   3,500.00 | $ | | |
| | | b. | Ordinary and necessary operating expenses | $       0.00 | $ | | |
| | | c. | Rent and other real property income | Subtract Line b from Line a | | $   3,500.00 | $ |
| 5 | **Interest, dividends, and royalties.** | | | | $    0.00 | $ |
| 6 | **Pension and retirement income.** | | | | $    0.00 | $ |
| 7 | **Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose.** Do not include alimony or separate maintenance payments or amounts paid by the debtor's spouse if Column B is completed. Each regular payment should be reported in only one column; if a payment is listed in Column A, do not report that payment in Column B. | | | | $    0.00 | $ |
| 8 | **Unemployment compensation.** Enter the amount in the appropriate column(s) of Line 8. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below: <br> Unemployment compensation claimed to be a benefit under the Social Security Act   Debtor $    0.00   Spouse $ | | | | $    0.00 | $ |
| 9 | **Income from all other sources.** Specify source and amount. If necessary, list additional sources on a separate page. Total and enter on Line 9. Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism. | | Debtor | Spouse | | |
| | | a. | | $ | $ | | |
| | | b. | | $ | $ | | |
| | | | | | | $    0.00 | $ |
| 10 | **Subtotal of current monthly income.** Add lines 2 thru 9 in Column A and, if Column B is completed, add Lines 2 thru 9 in Column B. Enter the total(s). | | | | $   11,500.00 | $ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

3424 Carson St., Suite 350
Torrance, CA 90503

A true and correct copy of the foregoing document described as **OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL BY BAY AREA FINANCIAL CORPORATION; DECLARATION OF VINCENT J. LOMBARDO IN SUPPORT THERE OF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 9, 2011** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**See attached service list**

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On **August 9, 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**See attached service list**

☒  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| August 9, 2011 | Brenda L. Campos | _(signature)_ |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

### SECTION I

### SERVED VIA NEF BY THE COURT

**Office of the US Trustee**
Ustregion16.la.ecf@usdoj.gov

Dare Law
Dare/law@usdoj.gov

Melanie C. Scott
Melanie.scott@usdoj.gov

**Debtor's Attorney**
Michael J. Berger, Esq.
Michael.berger@bankruptcypower.com
maritza.arizaga@bankruptcypower.com

**Creditor Bay Area Financial Attorney**
Barry R. Gore, Esq.
bgore@scckg.com

**Other Interested Parties**
Darlene C. Vigil
cdcaecf@bdfgroup.com

Mehrdaud Jafarnia
bknotice@mccarthyholthus.com

Gerald S. Kim
cdcaecf@bdfgroup.com

### SECTION II

### SERVED VIA FED EX OVERNIGHT

**JUDGE**
Honorable Vincent P. Zurzolo
255 E. Temple St., Suite 1360
Los Angeles, CA 90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                   **F 9013-3.1.PROOF.SERVICE**

**SECTION II CONTINUED**

**SERVED VIA US MAIL**

**DEBTOR**
Andrew Ariza
1359 Vienna Way
Venice, CA 90291

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                    **F 9013-3.1.PROOF.SERVICE**